May it please the Court, Opposing Counsel, I'm Florence Brummer from Elliot Issac's Office, representing the Plaintiff and Appellant, Mr. David Jones. Mr. Jones is merely asking for his day in court. As the Court knows, this case was a summary judgment ruling in favor of the defendant. My client appealed. The defendant did not file a cross appeal. In this case, the Court applies the McDonnell-Douglas standard. That standard is cited throughout all the cases that are cited in both briefs. The District Court in this case has already determined that the defendant did not file a cross appeal. Mr. Jones is a member of a protected class, qualified for his position, and fact excels. He experienced an adverse action, which, of course, was the termination. And the fourth one, which the District Court grudgingly gave Mr. Jones, was were similarly situated individuals treated more favorably. In the opening brief, it is argued that all the individuals that were cited were similarly situated for the various reasons. Basically, they had done something that involved, most of them involved some sort of sexual harassment. There was a racial harassment. And they were treated all differently by Walmart. Would a single incident of a sexually suggestive comment made to an employee, would you regard that as comparable then? Yes, Your Honor. Yes. Yes. And the reason being is that it – these were – in these cases where you see the similarly situated individuals, what had happened was there had been some sort of incident, and then right away a complainant went and complained about it, and it was investigated. Mr. Jones' case was a little bit different. So there wasn't – and I think this bothered the District Court quite a bit, was that there wasn't a case that was exactly like his. Because in his case, the alleged victims of the sexual harassment didn't come forward to the management. There was another individual who said, hey, I think something's going on with this misstraining. And so then they brought in everybody, and they said, hey, is anybody treating you in a way that you don't like? And so the way the investigation was done was a little bit different, and the circumstances were different, but it's still similarly situated. There was some allegation of sexual harassment, and then it was investigated by Walmart. And with Mr. Guy Horne, the one that the District Court said actually was similarly situated, you had a day where this man just seemed to go around and sexually harass a bunch of people and say a bunch of comments to everyone. And it was addressed on that same day. And that's the one the District Court actually said was similarly situated. And similarly situated is when they display the similar conduct, and that's what these other individuals did. Again, the thing that the District Court was trying to say, like, the District Court wanted it to be exactly the same, wanted the same exact circumstances, the same exact complainants. And you're not going to have that. No, that's what's sort of odd about this claim of when we're comparing people, is that usually when you're talking about similarly situated, you're saying same job, same duties, same class, treated differently. Here, it's did they commit the same alleged act of sexual harassment. That seems to be an odd class. Do you have any cases that are close to this? The four cases that were cited in the opening brief, I call them NBCR. I was hoping to get a better acronym. But Nicholson, Backrad, and Chang. I think Nicholson is probably the closest, where you had the irregularities in the procedure and in the investigation. There was nothing that said that they had to be, like, exactly the same, but it was more focused on the irregularities and how it was treated by the investigating employee, the employer. So the District Court says that your client made, showed a prima facie case fairly, reluctantly. Right. Then the employer comes back with its legitimate non-discriminatory reason, which is that there was evidence that Mr. Jones had engaged in the sexually harassing conduct over some period of time. So at that point, the burden shifted back to Mr. Jones to show pretext. So let's talk about, let's assume a prima facie case, let's talk about the pretext and why it is that the District Court was wrong in saying that there was no genuine  Sure. Absolutely, Your Honor. The pretext was there was, number one, there was inconsistent policies that were done in the investigation. If you look at all the other investigations, including the one that the District Court says was similarly situated, the Horn case, basically you saw a very slim report. You saw very quick investigation. This was all very, very different than what happened in Mr. Jones' case. So opposing counsel says or the brief says, well, they had a different, maybe it was the District Court, someone says they had a different investigator, they were doing it in a different way, and you can't infer a pretext from doing a more thorough investigation of sexual harassment. Why isn't that a reasonable conclusion there? Well, the reasonable, well, first of all, we're on summary judgment. So my client only has to show a genuine issue of material fact. And this is one of the genuine issues of material fact. Why is it that we don't have a more thorough investigation with these other people? Going back to the The reason that you have a different investigator? I mean, that's the reason they gave. The different investigator, but also Wal-Mart saying they have a zero tolerance policy on sexual harassment. So the investigation should be set away. All right. Let's accept what you say is true. I mean, the problem I own this record and I think about it in the District Court is there wasn't any evidence. You can argue that it wasn't done perfectly or you can make perhaps a case in some other jurisdiction of wrongful termination. But to show that it's pretextual because of race, that's a different matter. Is there anything in the record indicating any racial animus other than the circumstantial evidence you've talked about? There was nothing direct, Your Honor. That is correct. There was nothing in the record that showed direct. It was circumstantial. And, again, the way that the case law reads is that the circumstantial is minimal and a reasonable juror would have to understand that evidence. Not only do we have how Wal-Mart's saying, well, we have a zero tolerance policy, but then we see non-African Americans who receive tolerance. What happens with the non-African Americans? They are either told to stop it, stop doing that, and Mr. Horn, again, the one who the District Court says was similarly situated, gets to take a class. My client's offered none of that. Immediately, the decision is that he is going to be terminated. There was some talk in the record that the Wal-Mart, that Wal-Mart had considered sending him to the class, but they didn't. And so that is showing the pretext. There was even some, when you look at the, how the investigation was done, and this was cited, this was referred to in the reply brief, where it said, Mr. Jones receives a Cadillac investigation. His investigation is people are brought in, they're sat down, they're asked questions. We don't see this in the other investigations, which is another demonstration of pretext. And I understand what the arguments of the defendant are. And I understand what the District Court's saying, but this is summary judgment. And the judge was not supposed to conduct basically a paper trial. In fact, it almost appears to me what the judge did in this case was almost added a fourth element to McDonnell-Douglas, which was when Mr. Jones identifies the pretext, then the District Court says, I don't really like your pretext, so now I'm going to grant summary judgment. And that's not the fourth element. May I reserve my extra time, Mr. Forten? I was going to say, you're down to about five minutes. I'd like to reserve my time for rebuttal. Thank you. Good morning. I'm from the court. Steve Biddle for Walmart. Just to sort of jump into where I can see your concerns are with the prima facie case and then the pretext, it struck us as strange that the judge, and frankly very deferential to the plaintiff's position, which should be the way the District Court handles a motion for summary judgment, that the court found that there was a similarly situated person in this case. This person, this guy, Guy Horn, who was the one the judge found similarly situated, made comments only in one day. Many of the comments, most of the comments were not even to coworkers. They were to passersby while they were in a van going somewhere. They were, even assuming they were sexually inappropriate comments, it happened one time. There was no touching. It wasn't repeated. It wasn't pervasive. The nature and severity of what Mr. Jones was accused of was so far beyond the nature and severity of what Mr. Horn was accused of. We don't believe the District Court was correct in assuming that Mr. Horn was similarly situated for the prima facie case. Okay. Then the second point is, how does that relate to the pretext element? I think it's, at first, just to jump back just a second, the next stage, of course, is Walmart has the burden of persuasion to show that there was a legitimate non-discriminatory reason, and it was that Mr., for terminating him, and it was that he violated the harassment discrimination policy. So then we go to pretext. We know from many Ninth Circuit cases, including Wallace v. J.R. Simplot from 1994, that the plaintiff needed to show pretext at the summary judgment stage specific and substantial evidence of pretext. Now, what does that mean? It means something beyond just showing that there's a similarly situated person for the prima facie case. Otherwise, why would we have pretext? Why would we have that third stage from the Supreme Court's case in McDonnell v. Butler? Well, why is it enough, as opposing counsel argues, that for Guy Horn, they do this very superficial investigation, whereas for Mr. Jones, they do this searching investigation, allegedly to dig things up? Why isn't that enough to show pretext? Sure. That's a good question. Well, first of all, it has no – it does not create any direct or even circumstantial evidence that it had anything to do with race, which is the ultimate question here. Secondly, the nature and severity of what Mr. Horn was accused of, one day, making some comments, was far different from what Mr. Jones was accused of. So the way that Jones' investigation happened is somebody came and complained and said, hey, this – I believe this person is being sexually harassed. She doesn't want to say anything. And so they went to that person, which good management should do, and they said, what's happening? What's going on? And she said, well, he's calling me a lot. He calls me several times a day, because the guy's a truck driver, he's on the road most of the time, and she's in the dispatch office. He calls me and he says things that make me uncomfortable. Do you know if he does this to anybody else? Well, yes, this other woman, Yolanda Lopez, told me that he – when he is here in the office, he touches her inappropriately, makes comments to her, and even rubs her breast when he does touch her. That is a different – you know, far different scope than what Guy Horn was accused of, making some inappropriate comments in one day. So that's why, along with having a different investigator who was being very, very thorough, as we can see, not only because Mr. Jones had been there a while and had a good reputation there, and these were very – but these were very serious circumstances, very serious allegations. So the expanded investigation was because of that. The Guy Horn investigation was two years earlier, too, and the same people were not there investigating to investigate, as were there later. So to answer the other part of your question with regard to pretext, just – let me give you an example. Let's say an employer has a policy that says if you have two no-call no-shows – I'm So if you call in twice – or you fail to call in twice and don't show up for your shift, you'll be terminated. So let's say we have two different people. We have a woman who's been employed for 30 years with the employer. We have a man who's been employed for two weeks. The woman who's been there 30 years – 20 years ago, she had a no-call no-show. And then today, November 4th, she has another no-call no-show. The man, in two weeks, has two no-call no-shows in two weeks. Would it be justifiable for the employer not to fire the woman who's a 30-year employee – obviously a good employee, she stayed that long, they kept her that long – and terminate the man? Would that be pretext for sex discrimination? It might be that a similarly situated person was treated differently for the prima facie case because they're both employees, they're both subject to the same policy, and they both did the same thing. So they're similarly situated. And he was treated worse. He was fired. She wasn't. But once you get the pretext, you have to show, even at the summary judgment stage, that it had to do with, in that case, sex in our case race. There's no evidence whatsoever of that. And the judge was correct when he made that conclusion. Can I ask you a question here about the second element of the McDonnell-Douglas elements there, that framework? There, your briefing suggested that sexual harassment rendered him disqualified for his job. Can that be the basis? I mean, isn't that sort of bootstrapping by making an argument because he was sexually harassing that, therefore, he's disqualified and meets that element? Yeah, that's a good question. The prima facie case, actually, so the first element before we get to the legitimate non-discriminatory issue, the first element that he, that the plaintiff has to prove is the prima facie case. And one part of that is that he was adequately performing his job for a termination discrimination case. When somebody is violating, found to have been violating the, so repeatedly and so pervasively, the sexual harassment policy, they don't meet that element. And that's why the Court, well, we believe the Court should have found that way. But ultimately, the Court, again, was very deferential to the plaintiff's position and took the evidence that the plaintiff stated as true. But using that, then, to go to the second step, did the person violate the sexual harassment policy, in this case, or the harassment discrimination policy? Walmart had a reasonable belief, based on its investigation, certainly, that Mr. Jones had violated the policy. That's all that the courts require. It doesn't require that it even be true. I have another case where a person was accused, was fired for stealing from the employer, suspicion of stealing from the employer. She came back about a month later and showed receipts where she had purchased the property and hadn't stolen it. The Court upheld, in our cases, upheld the termination because the employer, at the time of termination, had a reasonable belief that she had done that based on the evidence it had. And that's not discriminatory. So it's not, you know, to use – it's difficult. The element of the prima facie case about adequately performing the job is a difficult – has caused courts to have some difficulty in their analyses. However, for the most part, what that means is that the person is following the policies and performing appropriately and satisfactorily in the position. A couple – I just wanted to make a couple other points. One point is that penalizing Walmart for being careful in its investigation doesn't make any sense. When asked why were you so – to the investigator, and his declaration was part of the record, Kevin Upham, why were you so careful with regard to this investigation, he said, number one, the allegations were very, very serious. Number two, Mr. Jones was a highly thought-up truck driver at our company. And number three, I wanted to make sure that there was no discrimination. I wanted to make sure that he wasn't being treated this way because of his race. Now, is that wrong? So they go into this long investigation. Not only did they do that, did they have this long investigation, but also after the investigation was done, Mr. Upham, who's white, went to his boss, who's African-American, and said, here's my findings, conclusions, and laid it out. And that's all part of the court record. And said, I think we should either give him a step two – or excuse me, a step three discipline, which is what two of the other six people that plaintiff mentions are similarly situated got, which is one step below termination, basically your final warning. Or we should terminate him. But I'll leave it up to you. The district manager, African-American district manager, said, yeah, we need to terminate this. This is really bad. And they talked about previous issues, including Mr. Horn, Guy Horn, the one that the court found was similarly situated. And they determined that that's not similar, that he was not similarly situated, that he was – again, the nature and scope and severity of his action was different. So then it actually went higher. It went to other people in Walmart, including one other African-American upper management person, who also approved the termination. So that goes to show, again, that discrimination was not – that racial animus was not the motivation here. There's one other point I wanted to make, and that is that the appellant relies on what it calls exculpatory evidence, sort of using a criminal law term in a civil case. But – and the exculpatory evidence here is that during the lengthy investigation, the lengthy, broad investigation that Walmart undertook with regard to Mr. Jones' conduct, several people who were questioned said they had never seen him engage in sexual harassment. What they did in this investigation, because it was about sexual harassment, they talked to all the women who worked there, who could have worked with Mr. Jones on the same ship that he would have been there, and that kind of thing. Several of the women, many of the women who they talked to, said, we've never seen him do that. But what the – and so the appellants, in their response to our motion for summary judgment, and now in their appellate brief, say is that that's exculpatory evidence. That's evidence that was disregarded by the judge. Well, in fact, the judge said, are we supposed to disbelieve victims? Are we supposed to not believe and not give credibility, excuse me, to the victims of sexual harassment and actually believe people who weren't even there when it happened, but just say, well, he's a good character, he has a good character? That's basically what we're dealing with here. And that is not enough to show pretext, circumstantial or direct evidence of pretext. Thank you very much. Thank you, Counsel. Thank you, Your Honors. Regarding – I noticed, again, that there was another argument made regarding that Mr. Jones did not establish a prima facie case. The defendant in this case did not file a notice of appeal and continues to argue things that were decided by the district court. Going back to the similarly situated, my client has demonstrated that there was elements beyond similarly situated. Just another example, and the examples are spread throughout the briefs, but Ms. Strayman, she – there was problems with her credibility. She had, I think it was 66 marks in her file that showed that she had difficulties at work. And one of the complaints was that at some point she talked about her derriere. Ms. Lopez had said that she thought maybe the touching was accidental because sometimes people touch you when they talk to you. Also, in this case, it was supposed to be a confidential investigation, and there was the one employee who said, this should be thrown out because everybody's talking about this. So that's different, and it shows that there's a problem. Regarding pretext, opposing counsel gave a very lovely closing argument for a jury regarding pretext. This was summary judgment. My client demonstrated genuine issue of material fact, and summary judgment shouldn't have been granted. One thing I thought was very interesting that opposing counsel said was that Mr. Jones wasn't treated with discrimination because of his race because he received a more intense investigation because of his race. The investigation was done with more intensity because they wanted to make sure they were doing it right. So when you look at the non-African American files, you're going to have one or two sheets of paper in there. Makes it look like whatever happened wasn't a big deal, didn't really have a big consequence because of how Walmart conducted the investigation, because of my client's race. This is showing pretext. One of the arguments that's always come through is that one of the people who made the decisions was African American. That's a very poor argument. It was saying that someone can't be discriminated against because someone of the same race helps make the decision. I think that's just without merit. Your Honors, my client is asking that you reverse the summary judgment, remand to the district court, allow my client to have his day in court. Thank you, counsel. The case just heard will be submitted for decision and will be in recess for one minute.
judges: Settle, Thomas, Ikuta